Raul MATA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–94–00099–CR.

Court of Appeals of Texas,
San Antonio.

July 21, 2004.

332

George Scharmen, San Antonio, for Appellant.

Mary Beth Welsh, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## MEMORANDUM OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

This appeal is on its second remand from the Texas Court of Criminal Appeals. Raul Mata ("Mata") is appealing his conviction of misdemeanor driving while intoxicated. In this remand, the Court of Criminal Appeals has instructed this court to reconsider our harm analysis in light of its opinion in *Bagheri v. State*, 119 S.W.3d 755 (Tex.Crim.App.2003). The background and procedural history of this case are well-documented in prior opinions. *See Mata v. State*, 13 S.W.3d 1 (Tex.App.-San Antonio 1999), *rev'd*, 46 S.W.3d 902 (Tex. Crim.App.2001), *opinion on remand*, 75 S.W.3d 499 (Tex.App.-San Antonio 2002), *vacated*, 122 S.W.3d 813 (Tex.Crim.App. 2003). Accordingly, we will focus our opinion exclusively on the harm analysis. The issue that we must address is "whether the erroneously admitted testimony might have prejudiced the jury's consideration of the other evidence or substantially affected their decision." *Bagheri*, 119 S.W.3d at 763.

The erroneous admission of retrograde extrapolation testimony is considered non-constitutional error. *Bagheri*, 119 S.W.3d at 762–63. As the *Bagheri* court states:

> In considering non-constitutional error, an appellate court must disregard the error if the court, 'after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.' The question is not whether there was sufficient evidence to support the verdict. Instead, the reviewing court should consider the entire record when making this determination, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire if applicable. Important factors are 'the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. More specifically, the reviewing court should consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert.'

119 S.W.3d at 763 (citations omitted).

In *Bagheri*, the court found that the erroneous admission of retrograde extrapolation testimony resulted in harm. *Id.* at 763–64. The court reasoned that the testimony was elicited from an expert and that the State emphasized the scientific nature of the evidence. *Id.* at 763. The court further reasoned that the extrapolation testimony was not cumulative because the officer's testimony regarding the defendant's apparent intoxication and performance on field sobriety tests was somewhat subjective. *Id.* at 763–64. The court noted that the defendant offered testimony that his erratic driving and poor performance on the sobriety tests were caused by fatigue. *Id.* at 764. Although the defen-

dant admitted to drinking alcoholic beverages earlier in the evening, he presented testimony from a friend who stated that the defendant did not appear to be intoxicated that evening. *Id.* at 759, 764. The court recognized that the jury could have disbelieved the testimony favorable to the defendant but asserted that the "effect of the 'scientifically reliable' extrapolation evidence was almost certainly to tip the balance in favor of the State." *Id.* at 764. The court noted that during voir dire numerous members of the jury pool expressed a belief that a person who fails a breath test is "flat-out guilty of DWI." *Id.* Several venire members believed that alcohol concentration would necessarily decline over time and that a subject's alcohol concentration would therefore always be higher at the time of driving. *Id.* The court concluded, "While this information is not dispositive, it is an indication of the powerful persuasive effect the 'scientific' evidence has on the average juror." *Id.*

Similar to *Bagheri*, the testimony in this case was elicited from an expert and emphasized by the State. During voir dire examination, an issue was raised regarding the State's burden to prove that Mata was intoxicated at the time he was driving, and the need to relate an intoxilyzer test result back to the time Mata was driving. The prosecutor asked several venire members if it would be helpful if the State called an expert to testify regarding what the results would have been at an earlier time. All of the venire members who were asked the question responded that the expert testimony would be helpful. One of the venire members stated, "Since it appears to be an item of great contention in this case then I think that is called for." During opening argument, the prosecutor noted the State would call an expert who would inform the jury of his qualifications and his experience, including his experience with the intoxilyzer machine. The

State further stated that the expert would explain the scientific theory to the jury. The State's expert, George Allen McDougall, testified regarding his certification as a breath test operator. McDougall stated that he is responsible for maintaining and repairing the intoxilyzer machines and supervising the certified breath test operators. McDougall explained how the intoxilyzer machine works and testified at length regarding the scientific theory underlying his extrapolation testimony. During closing argument, the prosecutor stated:

> Now, you remember that we brought Mr. McDougall, the expert on the intoxilyzer machine that testified. And you will remember that Mr. McDougall told you the range—that it was irrelevant whether or not Mr. Mata was coming up or going down, but that the range he would have been in two hours before the time they [tested] him was either a .13 or a .23. So remember what I told you about a red herring? [T]hings to distract your attention? Listen, it does not matter whether he was going up or coming down because either one of those is legally above the limit for driving here in Texas."

The prosecutor repeatedly referred to McDougall as an expert and concluded:

> Now, I would ask you to just, when you go to deliberate, to think through all of the testimony and remember the central things that were told to you from the witness stand, that the range had to have been, if he blew a .19, between a .13 and a .23. And that the only other possibility that would explain this is this scenario, of which even the defendant's testimony will not avail him of. Remember that. Remember that Mr. McDougall told you what the equivalent was—a .193 is the equivalent of having 12 beers or 12 shots of alcohol in your system. How was that ever explained?

Accordingly, the erroneously admitted evidence was both elicited from an expert and emphasized by the State. *See Bagheri,* 119 S.W.3d at 763.

Turning our attention to whether the evidence was "cumulative," we note that in *Bagheri,* the Texas Court of Criminal Appeals reasoned that the testimony of the arresting officer regarding his observations was somewhat subjective. *Id.* at 764. In this case, the arresting officer testified that Mata did not perform as directed on the field sobriety tests and that the officer observed the three indicators that are looked for in performing the horizontal gaze nystagmus test. The officer testified that initially he stopped Mata because Mata failed to dim his headlights after the officer flashed his lights as a warning. The officer also testified that he smelled alcohol on Mata's breath and that Mata's speech was slurred.

On cross-examination, however, the officer admitted that during the hearing on the motion to suppress, he testified that Mata did "pretty good" on the one leg stand test. The officer also agreed that the determination of a person's performance on field sobriety tests is a matter of interpretation. The officer who administered the intoxilyzer test testified that when he arrived to administer the test, Mata was passed out in the holdover cell. When he woke Mata up, Mata staggered and fell while exiting the cell. The officer characterized Mata's speech as slurred and his balance as poor, stating, "He was staggering and swaying and using the holdover cell as support. He even fell when he got up." On cross-examination, the officer stated that he believed Mata was passed out because he was intoxicated not because he had been waiting an hour to take the test.

As in the *Bagheri* case, the officers' testimony is somewhat subjective. *Id.* at

764. Furthermore, the State's "expert" testified that he believed that field sobriety tests are "good preliminary tests in and of themselves;" however, McDougall further stated:

> But I don't think they are that good. They don't divide persons into two groups, sober and intoxicated. There is a lot of variability between them. A person may have a plastic hip or something like that and not be able to walk a line. There could be other factors, maybe a person has had surgery or if we are looking at bloodshot eyes, they could even be tired and that can bring that on. There are many factors that can create each of these individual symptoms for intoxication.

Accordingly, the State's "expert" revealed some potential weaknesses in the officers' subjective observations and conclusions that Mata was intoxicated. In addition to the testimony of McDougall and the officers, the jury also knew that Mata had been stopped at 3:05 a.m., and that Mata had waited over an hour before the intoxilyzer test was administered at 5:14 a.m. The lateness of the hour could further bring the subjective observations of the officers into question because it provides an alternative explanation for Mata's poor balance, i.e., fatigue.

Having reviewed the entire record in light of *Bagheri,* we do not have a "fair assurance that the error [in admitting McDougall's testimony] did not influence the jury, or had but a slight effect." *Bagheri,* 119 S.W.3d at 763. The jury may have determined that Mata was intoxicated based on the testimony of the officers and Mata's admission that he drank about five to seven beers and two to three shots of tequila. However, we cannot say with fair assurance that the erroneously admitted retrograde extrapolation testimony did not prejudice the jury's consideration of the

evidence or substantially affect their deliberations. *See id.* at 763. Although the Texas Court of Criminal Appeals has recently held that intoxilyzer test results are admissible even in the absence of retrograde extrapolation testimony, *see Stewart v. State,* 129 S.W.3d 93 (Tex.Crim.App. 2004), the effect of the extrapolation evidence in this case "was almost certainly to tip the balance in favor of the State." *Bagheri,* 119 S.W.3d at 764. Accordingly, we hold the admission of the unreliable retrograde extrapolation testimony in this case was harmful.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.